FILED
CLERK
11:20 am, Oct 07, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
AMGELA M. MURO,

                Plaintiff,        **MEMORANDUM OF DECISION & ORDER**

    -against-                2:17-cv-6092 (ADS)

NANCY A. BERRYHILL, Commissioner of the
Social Security Administration,

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Pasternack Tilker Ziegler Walsh Stanton & Romano LLP**
*Attorneys for the Plaintiff*
25 Newbridge Road, Suite 203
Hicksville, NY 11801
    By:    Christopher Daniel Latham, Esq., Of Counsel.

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
    By:    Dara A. Olds, Esq., Assistant United States Attorney.

**SPATT, District Judge**:

On October 18, 2017, the Plaintiff Angela M. Muro (the "Plaintiff" or the "Claimant") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill, the then Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that she was ineligible to receive Social Security disability benefits or a period of disability.

Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 25(d), Saul is hereby substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action. *See,*

1

*e.g.*, *Pelaez v. Berryhill*, No. 12-CV-7796, 2017 WL 6389162 (S.D.N.Y. Dec. 14, 2017), *adopted by*, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).

Presently before the Court are the parties' cross motions, pursuant to FED. R. CIV. P. 12(c) for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is granted in part, the Defendant's cross-motion is denied in its entirety, and the matter is remanded for further proceedings.

I.     BACKGROUND

On September 25, 2013, the Plaintiff, then age 35, applied for a period of disability and disability insurance benefits under §§ 216(i) and 223 of the Act. A former teacher, the Plaintiff alleged that she had been disabled since September 1, 2009 because of the following ailments: (1) Thyroid cancer; (2) Hyperthyroidism, whereby an overactive thyroid gland can cause unintentional weight loss and a rapid or irregular heartbeat; (3) Grave's disease, an autoimmune disorder that causes hyperthyroidism; (4) Hypoparathyroidism, an excess of the hormone made by the four small parathyroid glands; (5) Hypocalcemia, an electrolyte imbalance indicated by a low level of calcium in the blood; (6) Gastroesophageal Reflux Disease ("GERD"), a digestive disorder that affects the ring of muscle between the esophagus and the stomach; (7) Anemia, where the body lacks enough healthy red blood cells to carry adequate oxygen to the body's tissues; (8) a Hernia; (9) Obesity; and (10) Depression. The Plaintiff further alleged that these ailments caused her frequent headaches and bowel movements, extreme fatigue, facial numbness, neck spasms, numbness and tingling in the legs, blurred vision, poor sleep, slurred speech, constant drooling, painful sitting, irritability, and anxiety.

Her claim was denied on January 10, 2014, and she requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge Patrick Kilgannon (the "ALJ") on

August 15, 2015 and March 24, 2016. On April 21, 2016, the ALJ issued a written decision in which he found that the Plaintiff was not disabled under the Act from September 25, 2013—the date she applied for period of disability and disability insurance benefits—through December 31, 2013—the date she was last insured.

The Plaintiff sought a review by the Appeals Council, and on August 22, 2017, the Appeals Counsel ruled that it would not further review the ALJ's decision. The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On October 18, 2017, the Plaintiff filed the present action. On January 31, 2019, the parties submitted the Plaintiff's Rule 12(c) motion and the Defendant's Rule 12(c) cross-motion as fully briefed to the Court.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

Briefly, the parties have presented two issues for the Court, both implicating the Plaintiff's residual functional capacity: the ALJ's assigning little weight to the opinion of one of the Plaintiff's physicians, Dr. Lester Ploss, and the ALJ's consideration of the Plaintiff's mental functioning. The Court finds that the ALJ: (1) gave the proper weight to Dr. Ploss's opinion and did not violate the treating physician rule as to that opinion; and (2) did not properly rule on the Plaintiff's mental functioning, because he failed to recontact the Plaintiff's treating psychiatrist for the Plaintiff's treatment records. Thus, the Court grants the Plaintiff's Rule 12(c) motion in

3

part, denies the Defendant's Rule 12(c) cross-motion in its entirety, and remands the case for further proceedings.

A. **The Standard for Benefits Under the Act**

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

### B. The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, *J.*) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–71 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 405(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view;" instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*," *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-CV-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

C. **The Rule 12(c) Standard**

Both parties filed Rule 12(c) motions. ECF 13, 15. Such motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *See Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Peterson*, 594 F.3d 150, 160 (2d Cir. 2010). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

D. **Application to the Facts of This Case**

The Plaintiff asks in her Rule 12(c) motion for the Court to reverse the final administrative decision in her action and remand it for the calculation of disability benefits. ECF 14. The Plaintiff raises two arguments in support, both of them concerning the treating physician

7

rule. First, she asserts that the ALJ failed to follow the treating physician rule when he adopted the opinion of the medical examiner, Dr. Gerald Galst, and gave little weight to the opinion of one of the Plaintiff's physicians, Dr. Ploss, as to the Plaintiff's residual functional capacity. *Id.* at 8. The Plaintiff further argues that Dr. Ploss's opinion was well-supported by medical evidence, including that of another treating physician, Dr. Joseph Terrana, who had deemed the Plaintiff totally disabled; thus, she argues, the ALJ should have given Dr. Ploss's opinion controlling weight. *Id.* Second, the Plaintiff contends that the ALJ failed to properly evaluate the Plaintiff's mental functioning when he: (a) did not adopt in its entirety the opinion of the Plaintiff's treating psychiatrist, Dr. Joel King; (b) did not attempt to obtain additional records after ruling that Dr. King did not provide any treatment notes or objective clinical findings; and (c) offered his own lay opinion as to the Plaintiff's mental functioning. *Id.* at 8–10.

In its Rule 12(c) cross-motion, the Defendant asks that the Court dismiss the action. ECF 16. The Defendant argues that the ALJ properly weighed Dr. Ploss's medical opinion because that opinion was not supported by the record and was inconsistent with his physical examination findings. Further, it argues that Dr. Terrana's opinion was also inconsistent with the evidence, which showed that the Plaintiff had responded positively to Dr. Terrana's treatments. *Id.* at 17–20. The Defendant also asserts that the ALJ correctly evaluated the Plaintiff's mental functioning when considering the Plaintiff's residual functioning capacity by limiting the Plaintiff to unskilled sedentary work in a low-stress setting; the ALJ properly did not place any special significance on Dr. King's opinion that the Plaintiff was totally disabled on the basis of psychiatric illness, and; the ALJ did not need to recontact Dr. King for more information because the record contained sufficient evidence as to the Plaintiff's depression, such as the Plaintiff's

testimony at the hearing, and the comments by her treating physicians that she had a normal mood and that she was capable of exercising. *Id.* at 20–22.

### a. As to Whether the ALJ Violated the Treating Physician Rule With Regard to Dr. Ploss

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight" so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue,* No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same).

Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts, *Burgess*, 537 F.3d at 128. The ALJ must consider the following factors if it decides to afford less than controlling weight to the treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of the treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (Summary Order); *see also Garcia v. Barnhart*, No. 01-CV-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot

9

substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

Here, in summary, the ALJ ruled that the Plaintiff was limited "to less than a full range of sedentary work based on medical evidence showing a history of hypoparathyroidism, physical examination findings of a slow gait and minimal muscle weakness, and the claimant's subjective complaints of fatigue and weakness." R. at 53. The ALJ considered the treatment provided by Dr. Terrana, whom the Plaintiff saw for treatment over several years, and who claimed the Plaintiff had been "totally disabled" since 2011. *Id.* at 54–56 (internal quotation marks omitted). The ALJ noted that the Plaintiff frequently complained of being in pain, but in any event, the Plaintiff had responded positively to Dr. Terrana's treatments. *Id.* For example, after Dr. Terrana adjusted her thyroid medication, the Plaintiff went from complaining of severe numbness and tingling throughout her body, to experiencing intermittent numbness in her hands and legs, and reports from a 2013 visit that the Plaintiff was regularly exercising. *Id.* at 54–55.

The ALJ further gave the following description of Dr. Ploss's opinion:

> The record contains an undated examination report from a Lester N. Ploss, MD. It appears that the examination was conducted in October 2013 at the behest of the claimant's attorney. Dr. Ploss noted that the claimant did not appear acutely or chronically ill. He noted that no masses were palpable in the neck and that there was no clubbing in the extremities. He found that there were no abnormal reflexes and that a sensory exam was normal. He found "minimal" muscle weakness in the extremities.

*Id.* at 55. Based on this description, the ALJ ruled that Dr. Ploss's opinion did not merit controlling weight:

> Dr. Ploss opined that the claimant can sit for up to 2 hours and stand or walk for up to 3 hours over an 8-hour workday. He opined that she cannot perform any lifting, carrying, bending, squatting, reaching, fine manipulations, grasping, or gripping. The undersigned gave this opinion little weight. There is evidence of only one examination by Dr. Ploss, and the claimant did not see this physician for treatment. Therefore, he is not entitled to the weight of a treating physician.

10

> Furthermore, his opinion is at odds with his physical examination (above), which was largely benign, aside from "minimal" muscle weakness.

*Id.* at 57 (internal citation omitted).

Conversely, the ALJ assigned "great weight" to the opinion of Dr. Galst, a specialist in internal medicine and cardiology, *id.* at 767. He summarized Dr, Galst's medical opinion as follows:

> Gerald Galst, MD, reviewed the evidence and opined that the claimant can: lift and carry up to 10 pounds frequently and up to 20 pounds occasionally, sit for up to 8 hours total, stand for up to 3 hours total, and walk for up to 3 hours total over an 8-hour day. He opined that she can frequently reach, handle[,] finger, and feel and that she can occasionally push or pull. He opined that she can frequently operate foot controls. He opined that she can never climb ladders or scaffolds or crawl. He further opined that the claimant can occasionally be exposed to unprotected heights, moving mechanical parts, humidity and wetness, pulmonary irritants, extreme cold, extreme heat, and vibrations. He concluded that the claimant has had these limitations from May 2011 to present.

*Id.* at 56. The ALJ noted that, in support of these assertions, Dr. Galst referred to the Plaintiff's having received treatment for symptomatic hypocalcemia and hyperthyroidism that had restored her serum and calcium levels and thyroid function to normal. *Id.* The ALJ concluded that Dr. Galst's opinion was "well supported with citations to the record and consistent with the objective evidence." *Id.* In addition, the ALJ gave less weight to Dr. Terrana's opinion that that of Dr. Galst because it "relies heavily on the claimant's subjective complaints and is not supported by clinical findings. " *Id.* at 56–57.

The Court agrees with the Defendant's arguments. Both Dr. Ploss and Dr. Terrana's opinions are inconsistent with their own findings. Dr. Terrana opined that the Plaintiff had been totally disabled, but his records show the Plaintiff as having feelings of pain in her legs as well as numbness and tingling in her extremities that wax and wane throughout the day. *Id.* at 668, 675, 685. The records also show that the Plaintiff is able to exercise regularly, and that she had

responded positively to changes in her medication. *Id.* at 668, 685. Further, when he testified at the Plaintiff's hearing, when asked by the ALJ why the Plaintiff would not be able to perform a seated job, he answered that other patients with hyperparathyroidism tell him that it is uncomfortable to sit, but he made no such determination as to the Plaintiff. *Id.* at 88–89. Though Dr. Terrana's records show that the Plaintiff is limited to doing only certain work, they do not support his conclusion that the Plaintiff's is totally disabled.

As to Dr. Ploss, his opinion that the Plaintiff cannot perform any lifting, carrying, bending, squatting, reaching, fine manipulations, grasping, or gripping conflicts with his examination of the Plaintiff, where he said that she had "[m]inimal muscle weakness" in her extremities. *Id.* at 581–82. In addition, Dr. Ploss examined the Plaintiff only once, which further undercuts the Plaintiff's argument that he should be considered a treating physician. *See Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 135–36 (2d Cir. 2001) ("At the very least, as Connors's treating physician, Dr. Reddy was more familiar with Connors's condition and medical history than Dr. Mazurek, who saw Connors only once."); *see also Gearon v. Berryhill*, No. 17-CV-6675, 2018 WL 6531594, at *4 (E.D.N.Y. Dec. 11, 2018) (citing *Floyd v. Colvin*, No. 13-CV-4963, 2015 WL 2091871, at *8 (E.D.N.Y. May 5, 2015)). Thus, the ALJ had a basis for applying more weight to Dr. Galst's opinion than that of Dr. Ploss.

### b. As to Whether the ALJ Properly Considered the Plaintiff's Mental Functioning

Social Security Regulations instruct ALJs to take treating physicians' areas of specialization into account when determining how heavily to weigh their opinions. 20 C.F.R. § 404.1527(c)(1). An ALJ does not need to give substantial weight to opinions that exceed a physician's specialty. *See Arbello v. Comm'r of Soc. Sec.*, No. 18-CV-982, 2019 WL 1384094, at *14 (E.D.N.Y. Mar. 27, 2019) ("Because Dr. Adam is a psychiatrist, the ALJ was not required

to give significant weight to his opinion about how lupus would physically impact her ability to work."); *Mercado v. Berryhill*, No. 16-CV-6087., 2017 WL 3328177, at *14 (S.D.N.Y. Aug. 3, 2017) (giving little weight to a podiatrist's opinion on the plaintiff's neck, back, and knee).

Where there are deficiencies in the administrative record, an ALJ is under an affirmative obligation to develop a plaintiff's medical history, even when the plaintiff is represented by counsel. *Rosa*, 168 F.3d at 79. This obligation arises from the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted).

However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted); *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (Summary Order) (citing case law from other circuits for the proposition that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity"); *Micheli v. Astrue*, 501 F. App'x 26, 30 (2d Cir. 2012) (Summary Order) ("Here, the ALJ properly determined that he could render a decision based on the 500-page record already before him.").

An ALJ has "discretion to 'determine the best way to resolve the inconsistency or insufficiency'" when an ambiguity arises concerning a treating physician's opinion. *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 416.920b). While regulations have been amended to remove the provision requiring an ALJ to recontact a treating physician in the face of an ambiguity, *Quinn v. Colvin*, 199 F. Supp. 3d 692, 709

(W.D.N.Y. 2016), they still "contemplate the ALJ recontacting the treating physician when the additional information needed is directly related to that medical source's opinion." *Owens v. Berryhill*, No. 17-CV-2632, 2018 WL 1865917, at *7 (E.D.N.Y. Apr. 18, 2018) (Spatt, *J.*) (internal quotation marks omitted); *Jimenez v. Astrue*, No. 12-CIV-3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013).

In considering the Plaintiff's mental functioning, the ALJ had at his disposal the opinions of Dr. King, as well as Leslie Arent, LMSW, who is the Plaintiff's daughter's therapist. Dr. King in a letter said that the Plaintiff was totally disabled on account of her clinical depression. R. at 595, 597. He further said that because of the Plaintiff's hyperthyroid condition, "virtually any sustained task exhausts her" and that the "physical effort of gainful employment will evoke overwhelming fatigue." *Id.* at 595. In a previously filed letter, Dr. King said that "Mrs. Muro has had a nice initial response to treatment." *Id.* at 596. Arent said that the Plaintiff's condition affects her functioning in the household. *Id.* at 575–76. During the hearing, the Plaintiff also testified about her depression, saying that she sees Dr. King once every three months, that he prescribes her Lexapro for depression and anxiety, and that the medication is helpful to her, though she did not elaborate on how the Lexapro was helpful. *Id.* at 130–31.

The ALJ afforded "some weight" to the opinion of Dr. King in forming his own opinion that the Plaintiff was limited to unskilled, low stress work, but also ruled that the opinion was "less persuasive " because Dr. King did not provide any treatment notes or "recount[] objective clinical findings." *Id.* at 57. The ALJ also ruled that Arent's opinion was entitled to no weight, because she was not the Plaintiff's treating physician. The ALJ did not comment on the Plaintiff's testimony. He also did not discuss any of the other physician's observations about the Plaintiff's demeanor.

A significant part of Dr. King's opinion alleged that the Plaintiff's hyperthyroid condition makes doing sustained tasks exhausting. The ALJ properly did not give great weight to this portion of the opinion, because Dr. King, a psychiatrist, does not specialize in thyroid conditions. *See Arbello*, 2019 WL 1384094, at *14; *Mercado*, 2017 WL 3328177, at *14. For the same reason, the Defendant is incorrect that the ALJ could have based a valid medical conclusion on the Plaintiff's depression on the observations of Dr. Terrana and Dr. Ploss, who are not mental health specialists. *See Arbelllo*, 2019 WL 1384094, at * 14.

However, the ALJ erred in reviewing the Plaintiff's depression because he should have recontacted Dr. King for the Plaintiff's treatment records, instead of deeming Dr. King's opinion less persuasive because he had failed to provide them. Here, the missing information, treatment notes as to the Plaintiff's depression, goes to the essence of Dr. King's opinion on the Plaintiff's mental functioning. *See Owens*, 2018 WL 1865917, at *7; *see also Maneri v. Berryhill*, No. 17-CV-322, 2019 WL 4523972, at *4 (E.D.N.Y. Sept. 9, 2019) ("Not only did the ALJ decline to give the opinion considerable weight based on its lack of clarity, the missing information—the period in which Dr. Diaz made the examinations—is directly related to her medical opinion."). Further, the ALJ did not rely on any other source when ruling on the Plaintiff's depression.

Having not recontacted Dr. King, the ALJ improperly gave less weight to Dr. King's opinion on the Plaintiff's depression. *See Isernia v. Colvin*, No. 14-CV-2528, 2015 WL 5567113, at *6 (E.D.N.Y. Sept. 22, 2015); *see also Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) ("It is not enough for the ALJ to simply say that [the treating physician's] findings are inconsistent with the rest of the record.").

Because the ALJ erred in his consideration of the Plaintiff's mental functioning, the ALJ failed to properly rule on the Plaintiff's residual functional capacity. Accordingly, the Plaintiff's

Rule 12(c) motion is granted in part, the Defendant's Rule 12(c) cross-motion is denied, and the case is remanded for further proceedings.

## III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Rule 12(c) motion in part, as to the ALJ's consideration of the Plaintiff's mental functioning.  The Court also denies the Defendant's Rule 12(c) cross-motion in its entirety.  The case is remanded for further proceedings.

The Clerk of Court is respectfully directed to close the case.


It is **SO ORDERED.**


    __/s/ Artur D. Spatt_____             ____October 7, 2019____

    Arthur D. Spatt, U.S.D.J.                          Date